Argued February 20, affirmed March 31, reconsideration denied
April 30, petition for review denied May 20, 1975

CRAMPTON, *Appellant, v.* HARMON ET AL
(No. 72-2105), *Respondents.*
533 P2d 364

*Terence J. Hammons,* Eugene, argued the cause for appellant. With him on the briefs were Hammons, Phillips & Jensen, Eugene.

*Larry O. Gildea,* Eugene, argued the cause for respondents. With him on the brief were Gildea & McGavic, P.C., Eugene.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

Plaintiff was employed as a secretary by Lane County School District No. 71. In July of 1972 the school board discharged her. At plaintiff's request, the school board granted her a hearing in September of 1972. After hearing evidence and argument the school board adhered to its prior decision, ruling in the process that it was not necessary that cause be established for the discharge. Plaintiff then initiated this mandamus proceeding, and now appeals from an adverse decision in the trial court.

■ The questions presented are whether, based on constitutional doctrine, state statutes, or the school board's regulations, the plaintiff was entitled to a hearing at which the school board was required to establish cause for discharge. We hold that she was not.

■■ When considering whether a hearing is required as part of the governmental decision-making process, and, if so, the exact nature of the hearing, it is

important to distinguish between constitutional and statutory requirements and standards. The Due Process Clause has been interpreted to require hearings in certain situations, and the decisions of the United States Supreme Court specify the required hearing format. These constitutional authorities set minimum standards that must sometimes be complied with in the decision-making process. However, the Oregon legislature can, and has, enacted statutes that require hearings in situations where the constitution does not. And the legislature can establish hearing procedures that go beyond the constitutional minimums.

## I

We consider the statutory requirements first. The only statute applicable to plaintiff's former position, ORS 342.663, provides:

> "(1) As used in this section 'school employe' includes all employes of a public school district except those for whom a teaching certificate is required as a basis for employment in a public school district.

> "(2) A school employe who has been demoted or dismissed shall be entitled to a hearing before the school board if a written request is filed with the board within 15 days of the dismissal or demotion.

> "(3) School district employes subject to the civil service provisions of ORS chapter 242 are exempt from the provisions of this section."

Plaintiff contends that since ORS 342.663 creates a statutory right to a hearing, it must follow that this means a full trial-type hearing, complete with the usual due process requirements like advance written notice of charges, at which the school board must establish cause for the discharge. This analysis disregards the distinction, noted above, between constitutional and

statutory authorities. And we cannot agree with plaintiff's interpretation of ORS 342.663.

It is obvious that ORS 342.663 creates the right to some kind of hearing. The critical question is whether it creates the right to an "informational" or "trial-type" hearing.

> " 'Informational' administrative hearings have also been called 'speech-making' or 'auditive' hearings. Ayers v. Lincoln Co. Sch. Dist., 248 Or 31, 432 P2d 170 (1967); School Dist. 7 v. Weissenfluh, 236 Or 165, 387 P2d 567 (1963). The purpose of this kind of hearing is 'simply to permit the making of remonstrances.' Mohr v. State Board of Education, 236 Or 398, 401, 388 P2d 463 (1964). 'Informational' hearings are conducted like hearings before legislative committees that are considering proposed legislation.
>
> "By contrast, 'adversary' or 'trial-type' administrative hearings are conducted like trials with sworn testimony, subpoena power, cross-examination, application of the rules of evidence, etc. * * *."

N.W. Envir. Def. v. Air Poll. Auth., 16 Or App 638, 640, n 1, 519 P2d 1271, Sup Ct review denied (1974). ORS 342.663 is silent on the nature of the contemplated hearing. We therefore resort to legislative history.

ORS 342.663 originated as HB 1308 in the 1969 legislature, introduced at the request of the Oregon School Employes Association. 1969 Journal, p 721. As introduced, HB 1308 provided:

> "Section 2. A school employe will be demoted or dismissed only after 20 days' written notice given to the school employe by certified or registered mail from the district superintendent of his intention to do so, setting forth the grounds upon which he feels such dismissal is justified.
>
> "Section 3. The notice shall include a statement

to the effect that if the school employe, within 15 days after the date of receipt of the notice, requests a review he shall be entitled to have such a review before the local public school district board which is his employer."

The Executive Director of the Employes Association explained to the House Education Committee:

"* * * [A]t the present time there is neither tenure or [sic] civil service for non-teacher employes in a [school] district. There is nothing in the statutes that state an employe has to be given a reason for dismissal. He stated the association feels the dismissed employe should have the right to appeal to the local board." *Minutes,* p 1, April 1, 1969.

On April 8, 1969, the House committee voted to amend HB 1308, deleting the original Sections 2 and 3, quoted above, and substituting what is now ORS 342.663(2) and (3), also quoted above. There was no explanation during the committee proceedings of the reasoning behind elimination of the advance-written-notice requirement.

The Executive Director of the Employes Association later testified before the Senate Education Committee. He stated that the organization supports "the bill as amended but would prefer the original version." *Minutes,* p 5, April 25, 1969. There was no further explanation of the intent of the original version of HB 1308 or of the intent of the House amendment.

House Bill 1308 was subsequently passed by the legislature, Oregon Laws 1969, ch 266, p 461, and codified as ORS 342.663.

This legislative history is inconclusive. We learn that part of the original intent behind HB 1308 was to require a written statement of the reasons for dis-

charge, yet that requirement was deleted by amendment. We learn that both the original and amended versions of HB 1308 provided for a school board hearing for a discharged employe, yet there was no consideration, or at least no discussion, of the format of the hearing. The witness from the organization promoting passage of HB 1308 stated a concern with the absence of any civil service system for employes other than teachers, yet neither version of HB 1308 purported to establish a civil service system.

Ultimately, then, we base our conclusion on interpretation of ORS 342.663 in context with related statutes. The school board had the authority to "define the duties, terms and conditions of [plaintiff's] employment." ORS 332.505(2). It would be a substantial implied amendment to this general statute to conclude that ORS 342.663 requires a hearing to establish cause for plaintiff's dismissal. Moreover, plaintiff's employment as a secretary should be contrasted with the employment of teachers under the terms of the Fair Dismissal Law, ORS 342.805 et seq. For the first three years of employment, a probationary teacher is not entitled to a full "trial-type" hearing at which the school board must establish cause for dismissal. "* * * However, the probationary teacher is entitled to meet informally with the [school] board, at the teacher's request, to discuss the cause of dismissal." ORS 342.835(1). Plaintiff's argument here is that non-teaching employes have the right to a full trial-type hearing starting the first day of employment, although the statutes explicitly deny this right to teaching employes for three years. It seems unlikely this was intended by the legislature.

■■ We therefore hold that the hearing contem-

plated by ORS 342.663 is only an "informational" hearing. The discharged employe is entitled to present his or her contentions to the school board. The board need not decide whether there was cause for dismissal, although it may choose to consider that question or any other. The only guiding standard is that found in the general statutory duty of the board—the responsibility for the efficient management of the schools. *See,* ORS 332.072; 332.105.

## II

■ The constitutional question is whether plaintiff had a property interest—the expectation of continued employment—that could not be taken without first according her a hearing required by the Due Process Clause. *Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972); *Perry v. Sinderman,* 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972). This question is resolved by a determination of whether applicable statutes and regulations create job security or tenure for plaintiff's former position as a secretary with the school board. *Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 511 P2d 854, Sup Ct *review denied* (1973), *cert denied* 417 US 919 (1974).①

---

① Plaintiff's reply brief states that she "does not contend that her right to a hearing arises under the federal constitution." Yet the argument in her opening brief includes the following: (1) "the essence of due process * * * [is] an impartial tribunal"; (2) "plaintiff was constitutionally entitled to an unbiased tribunal"; (3) "under the 14th Amendment to the United States Constitution, it is plain that the plaintiff had a right to an unbiased tribunal at her hearing on the termination decision"; (4) there "is no justification for the failure to provide plaintiff with a neutral tribunal that is of sufficient gravity to outweigh the 14th Amendment guarantee of due process"; (5) the "failure of the school board to provide plaintiff with a pre-hearing statement of the precise reasons for which she was terminated * * * was a denial of the procedural due process to which plaintiff was entitled"; and

As previously noted, ORS 342.663 is the only statute applicable to plaintiff's former position. As we have interpreted that statute, it could not reasonably have created any expectation of continued employment.

Two sections in the school board's regulations are germane. Plaintiff relies heavily on the following section:

"\* \* \* Secretarial personnel will be evaluated on a continuous basis by the school principal and the superintendent. Any needed improvement will be called to the attention of the individual concerned and reported to the Board at the time. Failure on the part of the individual to show necessary improvement within a reasonable time, shall be sufficient grounds for dismissal."

The board responds by relying on another section:

"All secretarial personnel will be employed on an hourly basis, or monthly basis without contract. Beginning employees will be on a probationary basis for a period of 30 working days during which time employment may be terminated by either the employee or the [school] district at any time. Following the probationary period, employment may be terminated by either party on two weeks' notice."

The parties stipulated that these two board regulations were in effect at the time of plaintiff's discharge. They did not introduce evidence about any

---

(6) "defendants acted unlawfully and unconstitutionally in discharging" plaintiff.

It is difficult, to say the least, to comprehend the contention that plaintiff's hearing had to comply with procedural due process requirements, even though she was not constitutionally entitled to a hearing. As we perceive this case, whether plaintiff's hearing had to comply with constitutional requirements depends upon whether plaintiff was constitutionally entitled to a hearing.

other regulations, and thus it is not possible for us to construe the above two provisions in context.

Some aspects of the two regulations before us are relatively clear. One basis for the discharge of a secretary would be failure to improve after deficiencies are called to the secretary's attention. And after 30 days' employment a secretary enjoys limited job security to the extent of the required two weeks' notice, just as the professor involved in *Papadopoulos* enjoyed the limited security of a one-year's notice-of-termination requirement.

■ But assuming the notice requirement is satisfied, as it was in this case, for the plaintiff to be constitutionally entitled to a due process hearing, the regulations must do much more: they must provide that plaintiff is guaranteed permanent employment unless and until the school board can establish some ground recognized by the regulations—such as "cause" —for termination of employment. The two regulations before us do not go that far.

■ In general, regulations governing the *procedures* for discharge cannot create an expectation of continued employment, other than during the period of required notice of termination, as in *Papadopoulos*. Thus, in this case the procedural aspects of the regulations, like evaluation of plaintiff's work, and the notice requirement, could not reasonably have created the expectation of continued employment that is the predicate for a due process termination hearing.

■ Instead, usually it is only regulations governing the *substantive standards* for discharge that can reasonably create an expectation of continued employment. Thus, an employe told he or she will only be

discharged "for cause" is entitled to expect that employment is permanent unless and until the employer can prove "cause" for termination. Here, the regulations before us state only one substantive standard for discharge: "Failure * * * to show necessary improvement" after shortcomings are called to an employe's attention.

Does the enumeration of one limited basis for discharge mean this can be the only basis for discharge? If school administrators caught a secretary stealing from the "petty cash" drawer, would the board be powerless to discharge unless there was first an evaluation of the problem and a failure to improve? The very statement of the question suggests the answer—that the enumeration of one very limited basis for discharge was probably not intended to be the sole and exclusive possible reason to terminate employment.

Admittedly, these regulations are arguably ambiguous in their exact meaning. Conceivably, interpretation could be stretched to the point of reading them as creating an expectation of continued employment. But the results that would follow such an interpretation would be extreme: the employe's expectation would be a property interest, and under the Due Process Clause could not be "taken" without first holding a trial-type hearing, at which the public employer would have to establish grounds for such action.

Given the extreme results that can follow from the interpretation of statutes and regulations governing public employment, we resolve unanswerable ambiguities against tenure. Of course, draftsmen of statutes and regulations are free to express their intent in any manner, and we must follow that intent when

it can be perceived. But if we are uncertain about whether a statute or regulation was intended to guarantee permanent public employment, that doubt must be resolved to the contrary.

■ We conclude that the more likely intent behind the school board's regulations was not to limit the grounds for discharge, but merely to identify one possible ground. It follows that the regulations could not reasonably have created any expectation of permanent employment.

Since plaintiff could not claim a trial-type hearing, either under ORS 342.663 or the Due Process Clause, her arguments regarding a prehearing statement of "charges," an unbiased tribunal, and proof of cause for dismissal, all fail.

Affirmed.