30

Argued May 28, affirmed July 8, reconsideration denied August 20, petition for review allowed November 4, 1975

STATE OF OREGON, *Respondent, v.*
CHRISTEIN MARIE BROOKS
(No. C 74-05-1335 Cr), *Appellant.*

STATE OF OREGON, *Respondent, v.*
CHRISTEIN MARIE BROOKS
(No. C 74-03-0930 Cr), *Appellant.*

STATE OF OREGON, *Respondent, v.*
MURIEL DIANE SHANNON
(No. C 74-08-2469 Cr), *Appellant.*

STATE OF OREGON, *Respondent, v.*
MURIEL DIANE SHANNON
(No. C 74-11-3620 Cr), *Appellant.*

STATE OF OREGON, *Respondent, v.*
PEGGY L. WHITE (No. C 74-06-1918 Cr),
*Appellant.*

STATE OF OREGON, *Respondent, v.*
RENEE MARIE GANT (No. C 74-05-1580 Cr),
*Appellant.*

STATE OF OREGON, *Respondent, v.*
CHERI LYNN CHRISTENSEN
(No. C 74-07-2277 Cr), *Appellant.*

STATE OF OREGON, *Respondent, v.*
CHERI LYNN CHRISTENSEN
(No. C 74-07-2278 Cr), *Appellant.*

STATE OF OREGON, *Respondent, v.*
LINDA KAREN ASHER (No. C 74-06-1981 Cr),
*Appellant.*

STATE OF OREGON, *Respondent, v.*
JUANITA ROGERS (No. C 74-04-1054 Cr),
*Appellant.*

STATE OF OREGON, *Respondent, v.*
JUANITA ROGERS (No. C 74-06-1983 Cr),
*Appellant.*

STATE OF OREGON, *Respondent, v.*
JUANITA ROGERS (No. C 74-08-2470 Cr),
*Appellant.*
537 P2d 574

*J. Bradford Shiley,* Portland, argued the cause and filed the brief for appellants.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

SCHWAB, C. J.

Each of the defendants was convicted of violation of ORS 163.465, which provides:

"(1) A person commits the crime of public indecency if while in, or in view of, a public place he performs:

"(a) An act of sexual intercourse; or

"(b) An act of deviate sexual intercourse; or

"(c) An act of exposing his genitals with the intent of arousing the sexual desire of himself or another person.

"(2) Public indecency is a Class A misdemeanor."

The information as to each stated:

"* * * * *

"* * * During her performance on stage, the defendant was engaged in a series of rhythmic steps and acrobatics in more or less an accompaniment to the music which was playing * * *.

"The defendant exposed her genitals for the purpose of sexually arousing the members of the audience inside the Old Chelsea Theatre, 514 Northwest Fifth Avenue, Portland, Oregon.

"It is necessary for any individual to pay an admission fee of $5 to gain entrance to the theatre. None of the activity of the defendant could be seen by passers-by from outside the building which houses the Old Chelsea Theatre, and, in fact, one must be in the seating portion of the theatre in order to view those acts.

"The Old Chelsea Theatre is engaged in the business of providing entertainment in the form

of hard core, fully explicit motion pictures and live nude performances by females such as the above-named defendant.

"On the outside, the Old Chelsea Theatre has signs which restrict admission into the theatre to those 18 years or older, and, in fact, does not allow anyone under the age of 18 to enter the premises.

"The theatre, on the outside, advertises the nature of the type of entertainment which is shown and warns those who are offended by nudity that they should not enter.

"* * * * *"

Defendants stipulated to the truth of the facts charged.

Defendants raise two issues on appeal: (1) Is a theater which charges admission to an audience consisting only of persons over 18 years of age who are aware of the type of show which they are to witness prior to their entry a "public place" as that term is defined in ORS 161.015(9); and (2) must a specific finding that a dance is obscene and therefore not protected by the First Amendment be made before a dancer can be found guilty of violating the public indecency statute, ORS 163.465?

■■ We turn first to the question of whether the theater in which defendants' conduct occurred constitute a "public place" under the definition contained in ORS 161.015(9):

"* * * a place to which the general public has access and includes, but is not limited to, hallways, lobbies, and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence, and highways, streets, schools, places of amusement, parks, playgrounds and premises used in connection with public passenger transportation."

If the meaning of the definition is unambiguous it

must be enforced according to its clear language, absent constitutional limitations. *Remodeling Consult. v. Builders Bd.,* 19 Or App 794, 528 P2d 1373 (1974), Sup Ct *review denied* (1975); *Haas v. Myers,* 10 Or App 495, 500 P2d 1068 (1972). If the statute is ambiguous, legislative intent must be examined to determine its meaning. *Remodeling Consult. v. Builders Bd.,* supra. Another relevant factor is the intent of the draftsmen of the statute where such intent can be perceived. *Crampton v. Harmon,* 20 Or App 676, 533 P2d 364, Sup Ct *review denied* (1975).

In the context of this case the definition of public place is ambiguous. Public place is defined as "* * * a place to which the general public has access * * *." "General public" is not defined. All of the examples contained in the definitions are places into which admission is normally unrestricted and where casual observers, including minors, are likely to wander. Whether a theater which advertises the type of show to be presented, charges admission, and prohibits entry by persons under 18 fits within this definition is not immediately clear, and must be determined by reference to the intent of the legislature when it enacted both the definition of public place (ORS 161.-015(9)) and the public indecency statute (ORS 163.465).

The public indecency statute was passed as part of the 1971 comprehensive revision of Oregon criminal laws (Oregon Laws 1971, ch 743, § 120, p 1910). This section is included in Article 13 which deals with sex offenses. Legislative history indicates that the purposes of this article are:

"* * * [T]he protection of the individual, adult or child, against all nonconsensual or forcible acts, protection of the incompetent and physically helpless, protection of the young and immature and protection of the public from affronts to gener-

ally accepted standards of conduct." *Minutes,* Senate Committee on Criminal Law and Procedure 3 (Feb. 24, 1971—statement of project director).

Speaking specifically of the public indecency section, the project director stated that it is basically an "indecent exposure" type of statute designed to prohibit conduct which might be offensive to others. *Minutes,* supra at 7.

The Commentary to the public indecency statute, § 120 of the Proposed Oregon Criminal Code which was codified in ORS 163.465, indicates that this statute is taken from Connecticut Revised Penal Code § 186 (1969).[①] Commentary, Proposed Oregon Criminal Code 129. The Commission Comment to that Connecticut statute states:

"* * * This definition of 'public', for these purposes, is related to the basic rationale of the offense: protection of the reasonable sensibilities of others from *unwanted* sexual display * * *." (Emphasis supplied.)

The above policy statements indicate that the purpose of ORS 163.465 may have been only to protect the public from being unwillingly exposed to certain conduct which they may deem offensive. This conclusion is supported by the Commentary to Article 29 of the Proposed Oregon Criminal Code which deals with ob-

---

[①] Connecticut Revised Penal Code § 186 provides:

"(a) A person who performs any of the following acts in a public place is guilty of public indecency:

"(1) An act of sexual intercourse; or

"(2) an act of deviate sexual conduct; or

"(3) a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person; or

"(4) a lewd fondling or caress of the body of another person.

Public place for the purposes of this section, means any place where the conduct may reasonably be expected to be viewed by others.

"* * * * *."

scenity. This Commentary indicates that the legislature intended to limit the dissemination of obscene material only with regard to minors and public displays for advertising purposes. Commentary to Proposed Oregon Criminal Code 248.

However, there is nothing in the statute, the testimony before the legislature or the Commentary to the Proposed Oregon Criminal Code which specifically addresses the issue of whether performances inside a theater before a willing, adult audience were meant to be covered by the public indecency statute.

The legislative history of the definition of "public place" contained in ORS 161.015(9) is similarly unspecific. In the hearings before the Senate Committee on Criminal Law and Procedure it is only noted that the definition is "extremely broad." *Minutes* at 3 (Feb. 3, 1971). The definition of public place is applicable to several other sections of the Oregon Revised Statutes, including the statutes proscribing disorderly conduct, ORS 166.025, public intoxication, ORS 166.035, loitering, ORS 166.045 and accosting for deviant purposes, ORS 163.455. The varied contexts in which this definition is used support the proposition that the definition is meant to have broad application.

■ Any possible conflict between a general legislative policy against regulating what adults may willingly view and the broad language and application of the public place definition is resolved by the clear statement of the intent of the drafters of the public indecency statute which is contained in the Minutes of Subcommittee #2 of the Criminal Law Revision Commission. These Minutes contain the following passage:

"Representative Carson assumed the provisions in the section [§ 120, codified in ORS 163.465] would not apply to something like Bullfrog Four

or Woodstock because neither would be classed a 'public place'.

"Mr. Wallingford [one of the drafters of the revised criminal code] thought they would apply in that these festivals would be classed a 'public place' because the general public has access. It would be the same as a theatre.

"Senator Jernstedt commented that the adoption of the section would apparently eliminate the appearance of certain types of plays in the state.

"Mr. Wallingford did not think subsections (1) and (2) would apply because even in the most avant-garde plays, the acts are simulated. Subsection (3) would apply only if the act was done with the desire to sexually arouse the audience." *Minutes* at 8 (Oct. 22, 1969).

Since the intent of the drafters is so clear in this case and is not specifically contradicted by anything else in the legislative history, we follow this clearly expressed intention and hold that theaters come within the definition of "public place," ORS 161.015(9), for the purpose of ORS 163.465.

■ The only other issue presented on appeal is whether the trial court could constitutionally find that the defendants' dancing violated the public indecency statute without first finding that the dancing was obscene and thus not protected by the First Amendment. This question was resolved contrary to defendants' position by the Supreme Court in *City of Portland v. Derrington*, 253 Or 289, 451 P2d 111, *cert denied* 396 US 901 (1969). *Derrington* dealt with a Portland city ordinance which prohibited topless dancing in places where food or alcoholic beverages were served. The court upheld the ordinance and held that no specific finding that a dance is obscene must be made, saying:

"* * * In cases of this kind, the court must look to the substance of the regulation and ask

whether the elements of communication which may be present in the regulated conduct are significant enough to bring the entire course of conduct under the protection of the First Amendment. *Schneider v. State,* 308 US 147, 161, 60 S Ct 146, 84 L Ed 155 (1939).

"* * * * *

"* * * The city's legislative judgment in the matter should be upheld unless the statute unreasonably impinges upon those elements of communication which may be incidental to the regulated conduct. We do not believe the interference with communication in the case at bar has enough substance to present a First Amendment question * * *." 253 Or at 292-93.

Affirmed.