Argued December 3, 1975, reversed and remanded June 4, 1976

STATE OF OREGON, *Respondent,*
*v.*
CHRISTEIN MARIE BROOKS, *Petitioner.*
(C74-05-1335 Cr)

STATE OF OREGON, *Respondent,*
*v.*
CHRISTEIN MARIE BROOKS, *Petitioner.*
(C 74-03-0930 Cr)

STATE OF OREGON, *Respondent,*
*v.*
MURIEL DIANE SHANNON, *Petitioner.*
(C 74-08-2469 Cr)

STATE OF OREGON, *Respondent,*
*v.*
MURIEL DIANE SHANNON, *Petitioner.*
(C 74-11-3620 Cr)

STATE OF OREGON, *Respondent,*
*v.*
PEGGY L. WHITE, *Petitioner.*
(C 74-06-1918 Cr)

STATE OF OREGON, *Respondent,*
*v.*
RENEE MARIE GANT, *Petitioner.*
(C 74-05-1580 Cr)

STATE OF OREGON, *Respondent,*
*v.*
CHERI LYNN CHRISTENSEN, *Petitioner.*
(C 74-07-2277 Cr)

STATE OF OREGON, *Respondent,*
*v.*
CHERI LYNN CHRISTENSEN, *Petitioner.*
(C 74-07-2278 Cr)

[ 171 ]

STATE OF OREGON, *Respondent,*
*v.*
LINDA KAREN ASHER, *Petitioner.*
(C 74-06-1981 Cr)

STATE OF OREGON, *Respondent,*
*v.*
JUANITA ROGERS, *Petitioner.*
(C 74-04-1054 Cr)

STATE OF OREGON, *Respondent,*
*v.*
JUANITA ROGERS, *Petitioner.*
(C 74-06-1983 Cr)

STATE OF OREGON, *Respondent,*
*v.*
JUANITA ROGERS, *Petitioner.*
(C 74-08-2470 Cr)

550 P2d 440

*J. Bradford Shiley,* Portland, argued the cause and filed a brief for petitioners.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General.

McALLISTER, J.

## McALLISTER, J.

The seven defendants were each convicted of public indecency in violation of ORS 163.465. The convictions were affirmed by the Court of Appeals. 22 Or App 30. We granted review.

ORS 163.465 reads in pertinent part as follows:

"(1) A person commits the crime of public indecency if while in, or in view of, a public place he performs:

\* \* \* \* \*

"(c) An act of exposing his genitals with the intent of arousing the sexual desire of himself or another person."

It was stipulated at trial that each of the defendants did knowingly expose her genitals with the intent of arousing the sexual desire of another while dancing on the stage of the Old Chelsea Theatre in Portland. It was necessary for any individual to pay a fee of $5 to gain admission to the theater and no one could see the performance except from the portion of the theater where the patrons were seated. The Old Chelsea Theatre did not allow anyone under the age of 18 years to enter the premises and advertised that fact and further indicated the type of entertainment offered and warned that those who would be offended by nudity should not enter.

Defendants challenge their conviction on two grounds. They first contend that they did not violate ORS 163.465 because the theater in which they performed was not a public place as defined by ORS 161.015(9). They also contend that ORS 163.465 is unconstitutional because it does not require a finding of obscenity as a prerequisite to proscribing constitutionally protected expression.

The term public place is defined in ORS 161.015(9), as follows:

" 'Public place' means a place to which the general public has access and includes, but is not limited to, hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for

actual residence, and highways, streets, schools, places of amusement, parks, playgrounds and premises used in connection with public passenger transportation."

The public indecency statute, ORS 163.465, was passed as a part of the Oregon Criminal Code of 1971 and apparently was intended to replace the former statute proscribing indecent exposure, which was usually committed in places to which the public had free access.

ORS 167.060, which was also a part of the Oregon Criminal Code of 1971, deals with obscenity and related offenses and describes an obscene performance to mean "a play, motion picture, dance, show, or other presentation * * * performed before an audience * * *."

Since ORS 161.015(9) was also enacted as a part of the Oregon Criminal Code of 1971 it seems clear that if the legislature had intended the definition of a *public place* to include an obscene performance performed before an audience it would have so indicated in ORS 161.015(9).

Instead, the legislature defined a public place to include places where the public may enter at will. The term "places of amusement" in ORS 161.015(9) is used in conjunction with the terms "parks" and "playgrounds" and we think was not intended to include theaters where plays, motion pictures, dances, shows, or other presentations could be "performed before an audience." It seems apparent that the legislature intentionally differentiated between a "public place" and theaters and like places where entertainment is "performed before an audience."[1]

---

[1] A similar conclusion was reached in *People v. Conrad,* 70 Misc2d 408, 334 NYS2d 180, 183, where the court said:

"* * * Whatever the exact scope of application, it cannot be reasonably argued that this section is to apply to performances inside a building which cannot as here, be observed by anyone outside of said building."

This case is of particular interest because our public indecency statute was copied from the Connecticut statute, which, in turn, was based on the New York statute proscribing public indecency.

In revising the Oregon laws regulating obscenity as part of the Criminal Code of 1971, the legislature defined "obscene performance," but chose to make the exhibition of such performances a crime only when it was displayed to minors. ORS 167.060(6); 167.075. The official Criminal Law Revision Commission Commentary to the Proposed Oregon Criminal Code outlined the purpose of the new obscenity law as follows:

> "Sections 256 to 259 [now ORS 167.065 to 167.080] comprise the heart of the obscenity article which is aimed at prohibiting the dissemination of obscene materials to the young.
>
> * * * * *
>
> "* * * The draft focuses on two points: the dissemination of certain types of materials to minors, and public displays of certain materials. *No attempt is made to control or limit any other adult activity in this area."* (Emphasis added.) Commentary at 248.

The public displays referred to were the public displays of nudity or sex for advertising purposes, codified in ORS 167.090. The Commentary to that section stated:

> "This section attacks the problem of public displays of materials that may offend persons who are *unwillingly* subjected to them. * * *" (Emphasis added.) Commentary at 253.

In 1973 the legislature chose to expand the obscenity laws by enacting ORS 167.062 which proscribed sadomasochistic abuse or sexual conduct in live public shows and ORS 167.087 which proscribed the dissemination of obscene material to adults. These laws were referred to the people by referendum petition for a vote in the November 1974 general election and went into effect on December 5, 1974.

It appears from the stipulated facts that the nude dancing by the defendants on April 24, 1974 would be encompassed by the definition of "obscene performance" but was not prohibited under the obscenity laws in effect at that time as not performed for minors or displayed for advertising purposes. It was stipulated

that on occasion the defendants touched the faces of various patrons with their bare breasts. These facts indicate that the performance after December 5, 1974 would have been proscribed as sexual conduct in a live public show under ORS 167.062.

It is reasonable to interpret ORS 163.465 as a statute designed to protect the public from unwanted and shocking displays. A theater where patrons are forewarned and viewing is limited to those patrons does not satisfy the statutory definition of a public place. The performance in the Old Chelsea Theatre was limited to willing viewers and was not prohibited by ORS 163.465, although it now may be prohibited under ORS 167.062.

The case is remanded to the Court of Appeals with instructions to reverse the judgment of the trial court.

**BRYSON, J.,** dissenting.

There is one issue in this case. Did the legislature, by its enactments, intend that places of adult entertainment, such as Old Chelsea Theatre in Portland, be allowed to offer live entertainment consisting of nude dancing women exposing their genitals for the purpose of sexually arousing its customers? The facts posed in the question are stipulated to by both parties.

The defendants were convicted of violating ORS 163.465, which provides:

"(1) A person commits the crime of public indecency if while in, or in view of, a public place he performs:
"(a) An act of sexual intercourse; or
"(b) An act of deviate sexual intercourse; or
"(c) An act of exposing his genitals with the intent of arousing the sexual desire of himself or another person.
"(2) Public indecency is a Class A misdemeanor."

The defendants argue that such a theater, which admits only persons over 18 years of age who are aware of the type of performance before entering at $5 per head, is not a public place.

ORS 161.015(9) provides:

"(9) *'Public place' means a place to which the general public has access and includes, but is not limited to,* hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence, and highways, streets, schools, places of *amusement,* parks, playgrounds and premises used in connection with public passenger transportation." (Emphasis added.)

ORS 163.465 and 161.015(9) were both enacted as part of the Oregon Criminal Code of 1971.

Assuming, while not conceding, that the above definition of "public place" is ambiguous, we turn to the intent of the legislature in construing the language of the statute. The Minutes of the Criminal Law Revision Commission, Subcommittee No. 2, October 22, 1969, show:

"Representative Carson assumed the provisions of the section would not apply to something like Bullfrog Four or Woodstock because neither would be classed a 'public place'. Mr. Wallingford thought they would apply in that these festivals would be classed a 'public place' because the general public has access. *It would be the same as a theatre.* Senator Jernstedt commented that *the adoption of the section would apparently eliminate the appearance of certain types of plays in the state.*

"Mr. Wallingford did not think subsections (1) and (2) [paragraphs (a) and (b), subsection (1), ORS 163.465] would apply because even in the most avant-garde plays, the acts are simulated. *Subsection (3)* [paragraph (c), Subsection (1), ORS 163.465] *would apply only if the act was done with the desire to sexually arouse the audience."* (Emphasis added.)

Thus, it is clear from the legislative history that the members of the legislature intended that "public place" would include a so-called theater as a public place.

The majority opinion points out that "[i]t was necessary for any individual to pay a fee of $5 to gain admission to the theater" and that the "patrons are

forewarned." This seems to be beside the point as the statute defines "public place" as one where "the general public has access." The fact that admission was charged is of little consequence. The charge of admission could be placed at 10 cents. Also, one could be forewarned of an unlawful act but this would not prevent it from being accessible to the public.

Based on the defendants' stipulation of the facts, it would appear that they are each guilty of the crime of public indecency as defined in ORS 163.465(c) by committing the said acts in "a place to which the general public has access."

The defendants also contend that the stipulated type of nude dancing is a form of communication which is protected by the First Amendment and, therefore, such "dancing may not be restricted without a finding that it is obscene." The United States Supreme Court has reiterated its position that some types of nude dancing are within the protection of the First Amendment but may be regulated in places where alcohol is sold under the Twenty-first Amendment. *See California v. La Rue,* 409 US 109, 93 S Ct 390, 34 L Ed 2d 342 (1972), which states:

> " 'We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.' 391 US, at 376, 20 L Ed 2d 672." 409 US at 117-18.

In *Doran v. Salem Inn, Inc.,* 422 US 922, 95 S Ct 2561, 45 Led 2d 648 (1975), the Supreme Court affirmed the lower court's granting of an injunction against authorities which would have restricted non-obscene conduct in the form of topless dancing. No court has yet pronounced that the acts stipulated to in the within case are "non-obscene" and they would be contrary to ORS 167.062, adopted by the 1973 legislature and approved by the voters at the general election in November of 1974.

I cannot accept the view that the type of conduct

performed in this case has anything to do with free speech. The dancing may express an idea to the viewers but it could only be one of obscenity. To say that the Old Chelsea is a theater stretches the imagination. It might be a place of "amusement" to some.

For the above reasons I would affirm the Court of Appeals, which upheld the conviction of the defendants in the lower court.