Submitted on record and briefs March 23, reversed and remanded with instructions on appeal; affirmed on cross-appeal October 12, 1984, reconsideration denied January 13, petition for review denied February 28, 1984 (296 Or 536)

MARKS et al,
*Appellants - Cross-Respondents,*

*v.*

CITY OF ROSEBURG,
*Respondent - Cross-Appellant.*

(E80-1783; CA A27195)

670 P2d 201

Charles F. Hinkle, Portland, and Randolph Lee Garrison, Roseburg, filed the brief for appellants - cross-respondents.

David A. Aamodt, former City Attorney, Roseburg, filed the brief for respondent - cross-appellant. (William J. Scheiderich, substituted as attorney of record effective March 8, 1983.)

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs appeal and defendant cross-appeals from a judgment declaring defendant's occult arts ordinance to be valid and enjoining plaintiffs from engaging in the practice of palmistry for hire or profit in Roseburg.[1] Plaintiffs brought an action for declaratory judgment, alleging that defendant's occult arts ordinance on its face violated their rights under several provisions of the Oregon and United States Constitutions. Plaintiffs prayed for a judgment declaring the ordinance unconstitutional, enjoining defendant from enforcing the ordinance and awarding plaintiffs their reasonable attorney fees and costs. Defendant moved to dismiss the action on the grounds that no justiciable controversy exists and that plaintiffs lack standing. The trial court denied the motion. Both parties moved for summary judgment. The trial court denied plaintiffs' motion, granted defendant's motion and entered the judgment. We conclude that the controversy was justiciable, that plaintiffs had standing and that the ordinance is overbroad and therefore unconstitutional.

The ordinance at issue, City of Roseburg Municipal Code § 10.04.060, provides:

"A.  No person shall for hire or profit engage in any practice of occult arts, either public or private, as that term is described and defined in subsection B of this section.

"B.  'Occult Art' means the use or practice of fortune-telling, astrology, phrenology, palmistry, clairvoyance, mesmerism, spiritualism or any other practice or practices generally recognized to be unsound and unscientific whereby an attempt or pretense is made:

"1.  To reveal or analyze past incidents or events;

"2.  To analyze or to define the character or personality of a person;

"3.  To foretell or reveal the future;

"4.  To locate by such means lost or stolen property;

---

[1] This case is before us for the second time. In *Marks v. City of Roseburg*, 59 Or App 558, 651 P2d 748 (1982), we vacated the judgment, because plaintiffs had failed to serve the Attorney General with a copy of the summons and complaint, as required by ORS 28.110. Thereafter, the Attorney General was served, he waived appearance and judgment was entered.

"5. To give advice or information concerning any matter or event.

"C. Nothing contained in this section shall be construed to prohibit or prevent:

"1. Any duly organized and recognized religious organization which promulgates religious teachings or beliefs involving spiritualism or similar media from holding their regular meetings or services;

"2. Any school, church, fraternal, charitable or other benevolent organization from utilizing occult arts for any bazaar or money-raising project, provided that all money so received is devoted wholly and exclusively to the organization sponsoring such affairs. In such case, the money so received shall be considered as a donation for benevolent and charitable purposes."

A violation of the ordinance is punishable by a fine or imprisonment or both. City of Roseburg Municipal Code.§§ 10.14.160, 10.08.010.

Before reaching the issue on appeal, we deal with the defendant's cross-appeal.

Defendant argues that, because plaintiffs are no longer residents of and do not operate a business in Roseburg, they lack standing and that no justiciable controversy exists. In *Gaffey v. Babb,* 50 Or App 617, 624 P2d 616, *rev den* 291 Or 117 (1981), we addressed standing and justiciability in the context of a declaratory judgment action challenging the facial validity of a criminal ordinance. A controversy is justiciable if the parties are adversaries in their views of the ordinance's constitutionality, if they are not friendly litigants who merely seek a construction of an ordinance and if a judgment as to the facial validity of the ordinance will settle the controversy. 50 Or App at 623. Plaintiffs have standing if their "rights, status or other legal relations" are affected by the ordinance, ORS 28.020, and if they have a "direct, substantial interest in the controversy." 50 Or App at 623.

In an affidavit, plaintiffs state that they rented a dwelling in Roseburg intending to engage in palmistry for

profit, were informed by Roseburg city officials that their intended activity was prohibited by the ordinance at issue, believed the ordinance to be unconstitutional and filed this action while they were residents of Roseburg. Plaintiffs also say that, because palmistry was the source of their income and they did not want to risk prosecution under the ordinance, they moved outside the Roseburg city limits to engage in palmistry. They state that they intend to live in Roseburg if the action is resolved in their favor. There is no question but that defendant intends to enforce the ordinance against plaintiffs if it is valid. Further, a judgment as to the facial validity of the ordinance will settle this controversy. It is obvious from the foregoing that the controversy is justiciable and that plaintiffs have standing. Accordingly, we affirm on the cross-appeal.

Plaintiffs contend that the ordinance is unconstitutionally overbroad in that it could deter citizens from exercising their rights to free expression under the First Amendment of the United States Constitution and Article I, section 8, of the Oregon Constitution. We first consider the state constitutional claim. *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983). Because we decide that the ordinance is unconstitutional under Article I, section 8, we do not reach the First Amendment question. *State v. Spencer,* 289 Or 225, 228, 611 P2d 1147 (1980).

■ When a law is challenged on its face as unconstitutionally overbroad under Article I, section 8, we need not consider whether the conduct of the person challenging the enactment is constitutionally protected. *State v. Robertson,* 293 Or 402, 412, 649 P2d 569 (1982); *State v. Spencer, supra,* 289 Or at 228. If the terms of the law prohibit or restrain expression that comes within the protection of Article I, section 8, it is unconstitutional. *State v. Spencer, supra,* 289 Or at 230.

Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

In *State v. Robertson, supra* (holding that Oregon's coercion statute, ORS 163.275, is unconstitutionally overbroad in part), the court addressed the constitutional protection provided by Article I, section 8:

> "* * * [It] forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach. Examples are perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants." 293 Or at 412.

> "* * * That an offense includes the use of words is not in itself fatal to the enactment of a prohibition in terms directed at causing harm rather than against words as such. Communication is an element in many traditional crimes. As stated above, article I, section 8, prohibits lawmakers from enacting restrictions that focus on the content of speech or writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences. This is the principle applied in *State v. Spencer, supra.* It means that laws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end. * * *" 293 Or at 416-17.

■ Defendant's occult arts ordinance focuses on the content of speech or writing. It is not a violation of the ordinance to engage in an "unsound and unscientific" practice. One violates the ordinance only by communicating to another the information derived from the practice of palmistry for a fee. The ordinance prohibits a person from lecturing for a fee or selling an article or book on any of the following subjects, if the analysis or conclusions are based on a method "generally recognized to be unsound and unscientific": (1) social, political or economic history (subsection B. 1); (2) psychology or psychiatry (subsection B. 2); (3) social, political or economic trends (B. 3); or (4) any other subject (subsection B.5).

The content of the speech and writing restricted by the ordinance is clearly within the protection of Article I,

section 8. The constitution guarantees persons the right to speak or write on "any subject whatever," regardless of whether they derived their beliefs from a method that the majority finds "unsound and unscientific." The fundamental policy behind this broad protection of freedom of expression was well stated in *Deras v. Myers,* 272 Or 47, 56, 535 P2d 541 (1975) (quoting *Whitney v. California,* 274 US 357, 375-76, 47 S Ct 641, 71 L Ed 1095 (1927); Brandeis, J., concurring):

> " 'Those who won our independence believed that * * * freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; that without free speech and assembly discussion would be futile; that with them, discussion affords ordinarily adequate protection against the dissemination of noxious doctrine; * * *. Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law—the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed.' "

The fact that the ordinance prohibits communication only if it is offered for "hire or profit" does not insulate it from scrutiny under Article I, section 8, which forecloses the enactment of laws "restraining" free expression and "restricting" the right to speak and write, not just laws flatly prohibiting those rights. Obviously, a law prohibiting a speaker or writer from accepting a fee for his communication constitutes a restriction on his right to speak or write. *Cf. Deras v. Myers, supra,* 272 Or at 57 (laws restricting expenditures in support of or in opposition to a candidate for public office constitute an unconstitutional restriction on free expression under Article I, section 8); *Schaumburg v. Citizens for Better Environ.,* 444 US 620, 100 S Ct 826, 63 L Ed 2d 73 (1980) (ordinance prohibiting certain organizations, whose purpose was to gather and disseminate information on public issues, from soliciting contributions unconstitutionally restricts free speech under the First Amendment). The protections of Article I, section 8, are not limited to those citizens with the means and inclination to offer their views gratuitously.

Defendant may exercise its police power to protect its citizens from fraud. Defendant cannot, however, restrict the right to speak and write on the basis of the content of the

communication that is within the protection of Article I, section 8. Defendant's occult arts ordinance focuses on and restrains expression that comes within the protection of Article I, section 8. We are unable to interpret the ordinance in a manner that eliminates this defect. *See State v. Robertson, supra,* 293 Or at 437. Therefore, we hold that City of Roseburg Municipal Code § 10.04.060 is unconstitutional.

Reversed and remanded on the appeal with instructions to enter judgment for plaintiffs. Affirmed on the cross-appeal.