Argued and submitted April 27; resubmitted In Banc December 1, 1983, reversed February 8, reconsideration allowed, affirmed as modified May 9 (68 Or App 360, 681 P2d 173), petition for review allowed July 31, 1984 (297 Or 546)
See 299 Or 78, 698 P2d 951 (1985)

# STATE OF OREGON,
*Respondent,*

*v.*

# SCOTT WAYNE HOUSE,
*Appellant.*

## (82-0265; CA A25766)

676 P2d 892

Rex Armstrong, Portland, argued the cause for appellant. On the brief were Stuart J. Cutler, Chief Public Defender, and Jaurene R. Judy, Deputy Public Defender, Metropolitan Public Defender, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Rex Armstrong, Portland, filed a brief amicus curiae for American Civil Liberties Union Foundation of Oregon, Inc.

NEWMAN, J.

Rossman, J., dissenting.

## NEWMAN, J.

Defendant was convicted, after a jury trial, of engaging in sexual conduct in a live public show and sentenced to pay a fine. The indictment charged that defendant

"* * * on or about the 7th day of January, 1982, in Washington County, Oregon did unlawfully and knowingly engage in sexual conduct, to wit: by touching his genitals, pubic area and buttocks against female spectators and customers, whose names are unknown and by allowing the above-said female spectators and customers, whose names are unknown, to touch the said defendant dancer's genitals, pubic area and buttocks, in an act of apparent sexual stimulation or gratification, in a live public show at the Chase Restaurant and Lounge located at 9242 SW Beaverton-Hillsdale Highway, Beaverton."

Defendant assigns as error that the trial court overruled his demurrer to the indictment. He argues that the statute upon which the indictment is based is void for vagueness under Article I, section 21, of the Oregon Constitution, is overbroad under Article I, section 8, of the Oregon Constitution, and violates the First and Fourteenth Amendments to the United States Constitution. Because we hold that ORS 167.062 is overbroad, violates Article I, section 8, and reverse, we do not reach the federal constitutional questions. *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983).[1]

Defendant was a male dancer at the Chase Lounge. He removed his cowboy outfit and danced in front of an all-female audience wearing only a "male G-string," which a witness described:

"* * * It is a nylon, small, less-than-bikini underwear. I mean, there is hardly anything there. It was very thin material. It was narrow-banded on the hips, very thin band down between the buttocks area. The front was—Well, the genitals were covered but barely. It was kind of stretchy material, so, uh, all the shapes visible. It was just the minimum amount you could use to cover your genital area."

---

[1] Defendant also assigns as error that the court denied his motion for judgment of acquittal, asserting that the evidence presented was insufficient to support the jury verdict. Because we hold that the trial court should have sustained the demurrer to the indictment, we do not reach this assignment of error.

As part of his dance, defendant left the stage and danced among the tables in the audience. Members of the audience touched defendant's buttocks or genitals while placing money in the front, back and side of his G-string. Members of the audience also reached out and touched defendant's buttocks and genitals as he passed down the aisle.

ORS 167.062, on which the indictment was based, provides:

"(1) It is unlawful for any person to knowingly engage in * * * sexual conduct in a live public show.

"* * * * *

"(5) As used in ORS 167.002, 167.007, 167.087 and this section unless the context requires otherwise:

"(a) 'Live public show' means a public show in which human beings, animals, or both appear bodily before spectators or customers.

"(b) 'Public show' means any entertainment or exhibition advertised or in some other fashion held out to be accessible to the public or member of a club, whether or not an admission or other charge is levied or collected and whether or not minors are admitted or excluded."

Sexual conduct is defined in ORS 167.060(10) as

"* * * human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification."[2]

Accordingly, ORS 167.062 prohibits (1) human masturbation, sexual intercourse, or any touching in a live public show of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, (2) whether alone or between members of the same or opposite sex or between humans and animals (3) in an act of apparent sexual stimulation or gratification.

---

[2] The legislature did not use the term "obscene," defined in ORS 167.087(2), to describe the prohibited sexual conduct. Moreover, in *State v. Tidyman,* 54 Or App 640, 648, 635 P2d 1355 (1981), we held that we could not read into ORS 167.062 that definition of "obscene" or require a finding that the touching is "obscene" before we would find prohibited touching. *See also State v. Frink,* 60 Or App 209, 653 P2d 553 (1982).

■ The words "human masturbation" and "sexual intercourse" are explicit. Similarly, the words "any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals" are clear. If vagueness exists in the statute, it is in the words "in an act of apparent sexual stimulation or gratification."[3] We give to those words, however, a meaning that is definite and avoids vagueness "with reasonable fidelity to the legislature's words and apparent intent." *See State v. Robertson,* 293 Or 402, 411, 649 P2d 569 (1982). Any touching of the described areas that is "in an act of apparent sexual stimulation or gratification" means any touching of the described areas that a reasonable person would perceive as sexually stimulating or gratifying.

■ So interpreted, however, the statute is overbroad.[4] It prohibits expression that is protected by Article I, section 8, which prohibits passage of any law "restraining the free expression of opinion, or restricting the right to speak, write or print freely on any subject whatever * * *." When a law is challenged on its face as unconstitutionally overbroad under Article I, section 8, we do not consider whether the conduct of the person challenging the enactment is constitutionally protected. *State v. Robertson, supra,* 293 Or at 412; *Marks v. City of Roseburg,* 65 Or App 102, 670 P2d 201 (1983). If the terms of

---

[3] In *State v. Blocker,* 291 Or 255, 260, 630 P2d 824 (1981), the court stated that:

" 'Vagueness' means that a penal law is stated in terms from which those to whom it is addressed—potential defendants, prosecutors, courts, and jurors cannot discern what conduct the lawmaker did or did not mean to include in the prohibition. Such a failure of communication in penal laws has been held to contravene article I, section 21 of the Oregon Constitution because 'they not only allow a court or a jury to define a crime but to do so after the fact,' *Megdal v. Board of Dental Examiners,* 288 Or 293, 298, 605 P2d 273 (1980), *citing State v. Blair,* 287 Or 519, [21,] 601 P2d 766 (1979) * * *."

Article I, section 21, of the Oregon Constitution provides in part:

"No *ex post facto* law * * * shall ever be passed. * * *"

[4]

" 'An "overbroad" law, * * * is not vague, or need not be. Its vice is not failure to communicate. Its vice may be clarity. For a law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited. A legislature can make a law as "broad" and inclusive as it chooses unless it reaches into constitutionally protected ground. The clearer an "overbroad" statute is, the harder it is to confine it by interpretation within its constitutionally permissible reach.' " *State v. Blocker, supra,* 291 Or at 261.

the statute prohibit or restrain expression that comes within the protection of Article I, section 8, it is unconstitutional.

■      In ballets, operas, musicals and dramas, whether tragic, comic or satirical, one performer, either in human or animal costume, may touch the buttocks, breasts or genitals of another performer. The other person touched may, as part of the performance, respond so that a reasonable person in the audience will perceive that the performer touched is sexually stimulated or gratified. To a reasonable person, the touching is "in an act of apparent sexual stimulation or gratification." That is the message that the performers seek to convey. It is touching that the statute makes criminal. It is also expression that is protected by Article I, section 8. Live public shows that would fall under the sweep of the statute include Shakespeare's "Romeo and Juliet," the musicals "South Pacific," "Hair," and "Oh! Calcutta," the ballets "Swan Lake," and "Leda and the Swan," and Tennessee Williams' dramas "Sweet Bird of Youth" and "Cat on a Hot Tin Roof."

Because the statute is overbroad and prohibits expression protected by Article I, section 8, we may not construe the statute to narrow its scope. *See State v. Robertson, supra,* 293 Or at 412; *see also Marks v. City of Roseburg, supra,* 65 Or App at 109; *State v. Frink, supra.*[5] ORS 167.062, therefore, violates Article I, section 8, of the Oregon Constitution.[6] The court erred in not sustaining the demurrer to the indictment.

Reversed.

---

[5] As stated in *State v. Frink, supra:*

"* * * we would be inviting legislation proscribing free expression, leaving it to the courts to protect that freedom in individual cases. We may not do that." 60 Or App at 216.

[6] In *State v. Tidyman, supra,* the indictment charged under ORS 167.062(3) that defendant directed, managed, financed or presented "a live public show in which the participants engaged in * * * sexual conduct." The defendant moved unsuccessfully to dismiss the indictment. We did not consider the Oregon constitutional questions including whether the statute was overbroad under Article I, section 8, or vague under Article I, section 21, but ruled that ORS 167.062 was not unconstitutional on its face under the First Amendment to the United States Constitution. *Tidyman* relied on *City of Portland v. Derrington,* 253 Or 289, 451 P2d 111, *cert den* 396 US 901 (1969), and *State v. Brooks,* 22 Or App 30, 537 P2d 574 (1975), *rev on other grounds* 275 Or 171, 550 P2d 440 (1976), neither of which arose under ORS 167.062, or considered Article I, section 8, or Article I, section 21, of the Oregon Constitution.

**ROSSMAN, J.,** dissenting.

The majority has concluded that ORS 167.062 is overbroad because it "prohibits expression that is protected by Article I, section 8." Thus, once again, this court has wielded its mighty axe, and struck down another legislative act as unconstitutional. Because I think that the majority may have misconstrued its role in cases of this type, and because I believe that it has overlooked a reasonable interpretation of ORS 167.062 which avoids overbreadth, I must dissent.

I begin by noting that our mission in a case like this one is not to pass judgment on the wisdom of the legislature's attempt to regulate morality. Approval or disapproval of the legislature's motive is irrelevant. Rather, we are to concern ourselves solely with whether the challenged statute is constitutional and we are obligated to uphold its validity if at all possible. *See City of Portland v. Derrington,* 253 Or 289, 292, 451 P2d 111, *cert den* 396 US 901 (1969); *City of Portland v. White,* 9 Or App 239, 495 P2d 778, *rev den* (1972). This obligation to uphold legislative acts requires this court to literally rescue a statute from unconstitutionality by adopting a narrowing construction if it can be done "without departing too far from what the legislature sought to accomplish or what the statute itself can convey to a reader." *State v. Robertson,* 293 Or 402, 412, 649 P2d 569 (1982).

> "A narrowing construction similarly may save a statute attacked as 'overbroad,' unless the constitutional guarantee invoked against the statute forbade its very enactment as drafted. * * *"

The initial question therefore is whether ORS 167.062 is facially unconstitutional, *i.e.,* is the conduct which the statute proscribes a form of expression protected by Article I, section 8. After examining the statute head-on, I am convinced that there is no problem with its facial validity. It concerns a form of conduct to which constitutional protections have not been extended. *See generally, City of Portland v. Derrington, supra* (where the Supreme Court held that the elements of communication which are incidental to appearing topless in a bar or restaurant lack enough significance to warrant First Amendment protection for that form of conduct); *see also State v. Tidyman,* 54 Or App 640, 635 P2d 1355 (1981), *rev den* 292 Or 722 (1982) (where we relied on the

*Derrington* rationale to sustain the denial of a motion to dismiss a prosecution brought under ORS 167.062).

Having passed that initial test, the statute is now open to a narrowing construction to avoid overbreadth. *State v. Robertson, supra,* 293 Or at 412. In this case, a principled construction limiting the scope of the statute to conduct which lacks constitutional protection is not difficult to achieve. We begin by examining the kind of conduct which the legislature sought to discourage as it is described by the language of the statute. ORS 167.062 proscribes the following during a live public show: sado-masochistic abuse or masturbation, intercourse and the touching of breasts, genitals or buttocks in an act that is apparently sexually stimulating or gratifying. The proscription covers a person touching his or her own body, another person's, and conduct engaged in by a person and an animal. The fact that the legislature specifically listed sado-masochistic abuse, actual masturbation, intercourse and human/animal encounters as examples of the kind of conduct this statute prohibits tends to illustrate that it is directed only at shows involving acts of gross sexuality. We discern a marked difference between the type of live public show this statute applies to and performances of "Romeo and Juliet" and "Swan Lake."

The former category is comprised of shows in which sexual conduct is engaged in as an end in itself. "Sexual conduct" is the justification for the existence of these shows, it dominates the performance, attracts people and sells tickets. Defendant's performance clearly constituted a "live public show" of the type ORS 167.062 was intended to prohibit. After disrobing, defendant danced from the stage out into the audience. At one point, he approached a seated woman, raised one leg up on the arm of her chair and danced while thrusting his pelvis to within inches of her face. At least 20 women reached into the front of his G-string. Defendant's buttocks were also stroked, pinched and fondled. During defendant's performance, the announcer made continuous remarks about sexual subjects and defendant's anatomy, *i.e.,* "his pistol is for shooting but his gun is for fun." The announcer told the audience that all of their fantasies would be fulfilled and that they would have a "double orgasm." With regard to the fondling of dancers, the announcer told the women, "If it feels like a hamster don't squeeze it." These remarks became more

graphic as the night progressed. There were doodle pads on the tables and the announcer encouraged members of the audience to write comments and poems. He promised to read the "nasty" ones aloud. Defendant eventually concluded his performance by turning his back to the audience, bending over and pulling his G-string down in the back, completely exposing his buttocks.

On the other hand, performances of Shakespeare, "Swan Lake" and "South Pacific" are valued for more than their sexual aspects. The "sexual conduct" in which Romeo and Juliet might engage is incidental to the main point of the play. It is merely part of an overall performance, the many parts of which are simply means to an end, *i.e.,* the depiction of realistic characters in a believable story. Anyone who has seen "South Pacific" knows that any similarity between Ezio Pinza's performance and defendant's is purely coincidental. Moreoever, Romeo's acting was never intended to motivate members of the audience to stuff monetary trinkets into his leotards and fondle his private parts. In fact, one of the most striking differences between defendant's performance and all the theatrical productions referred to in the majority opinion is that none of the latter rely on audience participation for their sexual content.

Accordingly, I would construe ORS 167.062(1) to cover only those live public shows in which sado-masochistic abuse, masturbation, intercourse and acts of "gross sexuality" are the exclusive theme. I therefore would reject defendant's constitutional challenge.

Even assuming that the majority is correct, I still see no reason to strike down the entire statute. The only part of ORS 167.062 identified by the majority as overbroad is the phrase:

> "* * * any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification."

Apparently, it concedes that the rest of the statute lacks constitutional problems. This is not surprising. I have been

unable to think of any legitimate theatrical production involving actual intercourse, actual masturbation or sado-masochistic abuse. Accordingly, I believe that, instead of striking down the entire statute with our judicial axe, we should simply prune out the diseased limb. *See* ORS 174.040; *State v. Cantwell,* 66 Or App 848, 852, 676 P2d 353 (1984). That can easily be accomplished here by simply excising that portion of the definition of sexual conduct which the majority has invalidated. Such an approach would result in a new, narrower definition of sexual conduct under ORS 167.060(10). That definition would provide that "sexual conduct means masturbation [or] sexual intercourse." The remainder of ORS 167.062 would remain intact, and through its incorporation of the new definition of sexual conduct, it would apply to a narrower range of behavior. Because that narrower range of behavior would not include touching of the genitals, breasts or buttocks in an apparently sexual manner, there should be no constitutional problems.