Argued November 20, affirmed December 17, 1973

STATE OF OREGON, *Respondent, v.* THOMAS
R. NEARING (No. C 72-11-3623), *Appellant.*

STATE OF OREGON, *Respondent, v.*
DORIS BAKER (No. C 72-11-3613), *Appellant.*
517 P2d 308

*Robert Laman,* Portland, argued the cause for appellants. With him on the brief were Darrell E. Bewley, Francis F. Yunker and J. Reynolds Barnes, Portland.

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

These are consolidated criminal cases in which separately indicted defendants were convicted of criminal activity in drugs arising out of the same transaction. ORS 167.207. The assignments of error relate essentially to the validity of a search warrant.

On November 25, 1972, Deputy Sheriff Erin Kelley and Sgt. Rodney D. Englert applied for and obtained a search warrant to search the premises at 5631 S.E. 83rd Avenue, Portland, Oregon.

The affidavit was sworn to jointly by the of-

ficers and stated, inter alia, that a reliable informant, who had been inside the premises within the past 48 hours had observed narcotics in the possession of both defendants and within the past ten days, on other occasions, had observed these defendants engaged in both the sale and possession of narcotics there.

The warrant was served the following day, November 26, 1972, and a quantity of narcotics seized from the half of the basement defendants were subleasing from a family which occupied the rest of the house.

Defendants assert the court erred in denying their motion to controvert the supporting affidavit to the search warrant. They contend that they proved, with uncontradicted evidence, that the following allegation in the affidavit was untrue.

"Within the past 48 hours I was informed by a confidential, reliable informant that within the past 48 hours, the said informant had been inside a premises located in the 5600 block of SE 83rd, which premises I have personally observed and know to be entered through the rear door to the rear of the house in a two story, wood frame dwelling, green in color with white colored trim, black comp. roof located on the west side of the street adjacent to the Chinese Alley Restaurant Parking Lot, one lots [sic] south of the intersection of 83rd Ave and Foster Rd Streets in Portland, Multnomah County, Oregon[.]"

ORS 141.150 provides:

"If the person from whose possession the property was taken controverts the grounds of issuing the warrant, the magistrate shall proceed to examine the matter by taking testimony in relation thereto."

At the outset we note that there is no supporting affidavit accompanying the motion to contro-

vert, as is required by *State v. Wright,* 266 Or 163, 511 P2d 1223 (1973), where the court said:

> "* * * [E]fficient judicial administration requires a preliminary showing by defendant of a substantial basis for questioning the truth or accuracy of the affiant before further court procedure is invoked pursuant to ORS 141.150. The method of disposing of criminal cases should not be allowed to become unnecessarily time-consuming."

The court held in *State v. Wright,* supra:

> "* * * [T]he trial court erred in conducting such a hearing at all in the absence of a preliminary showing by defendant by affidavit that there were reasons to doubt the bona fides of the affiant for the warrant."

■ Because this case was tried before *Wright* was decided, we consider defendants' contention. As with other attacks on a search pursuant to warrant, the burden of proof rests on the defendants.[1] *State v. Elkins,* 245 Or 279, 292, 422 P2d 250 (1966).

The California Supreme Court, in *Theodor v. Superior Court of Orange County,* 8 Cal 3d 77, 104 Cal Rptr 226, 243, 501 P2d 234 (1973), has recently stated:

> "* * * A presumably reliable person has attested to the truth of the matters alleged in the affidavit and a magistrate has in the exercise of his impartial function determined that the affidavit was truthful and acted upon it. Thus the state has sustained its initial burden by virtue of the affidavit itself. If the defendant seeks to controvert the allegations contained therein, it is his duty to come forth to reveal any inaccuracies. (Cf. People v. Alfinito (1965) 16 N.Y.2d 181, 186, 264 N.Y.S.2d

[1] State v. Wright, 266 Or 163, 511 P2d 1223 (1973), was decided July 19, 1973. The present motion was filed January 31, 1972, and heard February 7, 1973.

243, 246, 211 N.E.2d 644; Note (1966) 51 Cornell L.Q. 822, 825-826.)"

Defendants concede this fact but assert they had met this burden and that absent any contrary evidence by the state, the court should have granted their motion.

■ Generally, the credibility of witnesses is determined by the trier of fact. It is only in those instances where, as the Supreme Court has said, " ' "* * * disbelief of the story could not reasonably arise in the rational process of an ordinary, intelligent mind * * *" ' " that the issue becomes one of law rather than of fact. See *Rickard v. Ellis,* 230 Or 46, 51, 368 P2d 396 (1962).

■ Defendants testified that the witnesses called were the only persons within the premises during the 48-hour period alleged in the affidavit. Since each of the witnesses testified that he or she was not the informant, defendants assert that it necessarily follows that no informant had been in their residence as alleged. Regardless of the credibility of these witnesses, their testimony alone does not controvert the affidavit.

Only a few hours of the 48-hour period involved were accounted for by the testifying visitors. There were many more hours unaccounted for by any of the witnesses when none of them were present other than the defendants.

The issue then is whether, from the testimony produced by the defendants, the persons testifying on the motion to controvert were the only visitors on the premises during the 48-hour period and thus the defendants must be believed.

The court stated in *Rickard v. Ellis,* supra at 52 that:

"* * * [T]he principle that whether uncontra-

dicted testimony is such as to preclude the jury's function in testing the credibility of the witness or witnesses who gave it will depend upon the nature of the issue in the particular case which the testimony purports to resolve. Two important factors in determining whether the jury should be permitted to disbelieve the witness and draw an inference contrary to the uncontradicted testimony given are (1) the availability of evidence to contradict the witness's statement, and (2) the likelihood that the witness's interest in the litigation may tempt him to testify falsely."

Clearly, defendants' interest in suppressing the evidence was such that the court below did not act unreasonably in disbelieving them.⊗

■ Defendants next assert that the search warrant was invalid because it did not sufficiently describe the premises to be searched.

The warrant states, in pertinent part:

"* * * [Y]ou are hereby COMMANDED to make an immediate search of premises and surroundings located geographically as a two story, green, frame house which is the first house south of Foster Road on the west side of S.E. 83rd and which sits adjacent to the parking lot of the Chinese Alley Restaurant, Multnomah County, State of Oregon * * *."

Defendants contend that since the officers were aware that the defendants occupied and used the basement area as their office, and that other persons occupied the upstairs portion of the house, the search warrant should have restricted the search to the base-

---

⊗ The record shows:

"* * * [T]his Court finds, as matters of fact, that the testimony of the witnesses presented by the defense in support of its motion was not credible * * *."

ment portion, citing *State v. Koberstein,* 8 Or App 307, 315, 493 P2d 176, Sup Ct *review denied* (1972). As in that case, we conclude here the contention is without merit. There we said:

> " 'An exception to the rule that a search warrant directed against a multiple-occupancy structure must specify the subunit to be searched has been recognized in some cases where the multiunit character of the premises was not externally apparent and was not known to the officers applying for and executing the warrant.' 11 ALR3d 1330, 1344-45.
>
> *See, United States v. Santore,* 290 F2d 51 (2d Cir 1959), *cert denied* 365 US 834, 81 S Ct 749, 5 L Ed 2d 744 (1961); *Minovitz v. United States,* 298 F2d 682 (DC Cir 1962). In the case at bar, there was no evidence whatsoever indicating that the police knew or should have known there were two living units in the house. \* \* \*"

Here, Officer Englert testified at the suppression hearing, inter alia:

> "Q. Now, Sergeant Englert, prior to your obtaining the search warrant and preparing your affidavit to support the search warrant, what information did you have about the occupants of this house at 5631 Southeast 83rd Street?
>
> "A. That Tom Nearing and Doris Baker used that as their office.
>
> "Q. Did you have any knowledge regarding anyone who might live or rent the premises?
>
> "A. No, sir. I thought there were other people, I thought there were other people there. I did not know who they were or what their status was in regard to residence.
>
> "Q. What type of premises or what type of house is it?
>
> "A. It is a wooden frame, single-family residence.

"Q. Does it have the outer appearance of being an apartment house or a motel-type of dwelling?

"A. No, sir, it does not.

"Q. Did you have any information to the effect or related to the fact the defendants, Miss Baker and Mr. Nearing, might be renting a portion of that house?

"A. I did not know. All I knew was that the house was being used as his office, and that he used the basement portion as his office."

The defendants in fact were subleasing a portion of the basement from a family who occupied the ground-level portion of the house.

A curtain was installed to divide the basement into two parts. On defendants' side were a bed, dresser, card table, desk, bookshelf and phone. The other side continued to be used by the family.

The entrance to the basement was through the back door of the house and down the basement stairs. This door was also used by the family.

There was no mailbox or other external indication that defendants were solely using the downstairs portion of the house. From what Sgt. Englert was told and reasonably observed, it was not unreasonable for him to believe the defendants occupied the entire house.

The remaining assignment relating to the warrant was not raised below and, therefore, will not be considered for the first time here. *State v. Guerrero,* 11 Or App 284, 501 P2d 998, Sup Ct *review denied* (1972).

Affirmed.