Argued and submitted April 29, affirmed November 9,
reconsideration denied December 17, 1981,
petition for review denied March 16, 1982 (292 Or 722)

STATE OF OREGON,
*Respondent,*

*v.*

JOHN RAY TIDYMAN,
*Appellant.*

(No. 79-11-33971, CA 17557)

STATE OF OREGON,
*Plaintiff,*

*v.*

ART THEATRE GUILD, INC.,
*Defendant.*

(No. 79-11-33974, CA 17558)
(cases consolidated)

635 P2d 1355

Marvin S. Nepom, Portland, argued the cause for appellants. With him on the brief was J. Bradford Shiley, Portland.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

**YOUNG, J.**

Defendant Tidyman appeals from a judgment of conviction for promoting sexual conduct in a live public show in violation of ORS 167.062. The appeal of defendant Art Theatre Guild, Inc., was dismissed. We affirm.[1]

I

## MOTION TO SUPPRESS ITEMS SEIZED UNDER SEARCH WARRANTS

■ Police began an undercover investigation of the Star, Chelsea and Tom Kat theatres in downtown Portland, in November, 1978. In August, 1979, warrants were issued to search all three theatres. Defendant contends that the evidence acquired as a result of the execution of the three warrants should have been suppressed, because: (1) the affidavits in support of the warrants do not establish probable cause to believe that a crime was, at the time of the issuance of the warrants, being committed on the premises to be searched; (2) the affidavits are insufficient to establish probable cause to believe that the objects of the search, to-wit, defendant's business records, were on the premises to be searched; and (3) evidence was seized beyond that authorized by the warrants. Because the search and seizure was pursuant to the warrants, the burden of proving a lack of probable cause is upon the defendant. *State v. Elkins,* 245 Or 279, 292, 422 P2d 250 (1966).

### A. Allegations of Probable Cause

■■ The affidavits recite that the theatres had been under surveillance for seven months and described various acts of prohibited sexual conduct. The purpose of the warrants was to secure evidence which "might indicate the identity of the owners, managers, performers, employers, financiers, and presenters of the theatres and the shows." Defendant argues that, absent allegations in the affidavits to indicate that a crime had been committed or was occurring on the premises at the time the warrants were issued, the affidavits were fatally deficient. The question is not whether a crime was being committed, but whether there was probable cause to believe that the evidence

---

[1] The appeals of John Ray Tidyman and Art Theatre Guild, Inc., were consolidated by order of the court on August 15, 1980. After oral argument Art Theatre Guild, Inc., moved to dismiss its appeal.

sought would aid in the apprehension and conviction of the person or persons responsible for the commission of a crime, *Warden v. Hayden,* 387 US 294, 307, 87 S Ct 1642, 18 L Ed 2d 782, 792 (1967), and that relevant evidence was on the premises at the time the warrants issued. *Andresen v. Maryland,* 427 US 463, 478, 96 S Ct 2737, 49 L Ed 2d 627, 641 (1976); *State v. Willis,* 24 Or App 409, 545 P2d 1392, *rev den* (1976). The time lapse between the observation of criminal activity, i.e., sexual conduct, and the execution of the warrants did not preclude a determination that there was probable cause to believe that the premises contained evidence, i.e., business records, which would aid in identifying those persons responsible for promoting and presenting a prohibited live public show. *See Andresen v. Maryland, supra,* 427 US at 478, n 9.

Defendant also argues that the affidavits are insufficient to establish probable cause to believe that business records were on the premises to be searched. All the affidavits executed by the officer recite that he kept the place to be searched under surveillance for seven months and then states:

> "Based upon my experience and training as a police officer, I believe it is a normal practice for ongoing businesses to keep and maintain business records in the office and storage areas in the place of business. Therefore, I believe that the tax records, accounts, checks, pay stubs, employee lists, time sheets, rent receipts, public utility bills, notes, letters and the like should be located on the premises and likely would be helpful in the prosecution of the case and that they might indicate the *identity* of the owners, managers, performers, employees, financers and presenters of the theatre and shows." (Emphasis added.)

The affidavits in support of the warrants to search two of the theatres (the Star and Chelsea) also recite that the affiant, in support of his belief that business records are kept on the premises, talked to a former employe of one of the theatres who informed the affiant that he, as cashier, was instructed to keep a running total of the number of customers entering the theatres; that each employe was required to complete his own time record; and that each employe was paid by check on the theatre premises.

■ ■ The affidavits contain sufficient allegations to establish a nexus between the objects sought and the place to

be searched. The test is whether it is reasonable to infer that the items are likely to be located at the place to be searched. *State v. Johnson,* 34 Or App 73, 578 P2d 413, *rev den* (1978); *State v. Skinner,* 5 Or App 259, 483 P2d 87, *rev den* (1971), *cert denied* 406 US 973 (1973); and *see* generally, 1 W. La Fave, *Search and Seizure,* § 3.7, at 706-08 (1978). The affidavits stated that an ongoing business was being conducted at each of the theatres and that in conducting the business certain criminal activity had allegedly occurred on the premises. Although there was no direct evidence placing the business records at the theatres, it is reasonable to infer that business records would be kept at the place of business, especially where additional facts were supplied that an attendance record was kept and that employes prepared their time sheets and were paid by check on the premises of two of the theatres. *State v. Johnson,* 34 Or App 73, 578 P2d 413 (1978). The theatres were the most promising places to look for evidence to establish the "identity of the owners, managers, performers, employees, financiers, and the presenters of the theatres and the shows." *State v. Skinner, supra.*

B. Search Beyond The Scope Of The Warrant

■ Defendant also argues that the evidence seized was beyond that authorized by the warrants. Defendant states that an "enormous volume of material was seized" and some of that material was unrelated to "business records dealing with ownership, employment, management, or direction of the" theatres to which the warrants were directed. Defendant fails to specify what evidence was impermissibly seized and later introduced into evidence. To consider this assignment of error we would be required to search the entire record. We decline to do so. ORAP 7.19. *Dell v. K. E. McKay's Market,* 273 Or 752, 543 P2d 678 (1975); *Thomas v. Penfold,* 23 Or App 168, 541 P2d 1065 (1975), *rev den* (1976). The motions to suppress were properly denied.

II

### MOTION TO SUPPRESS ITEMS SEIZED AT THE TIME OF ARREST

In August, 1979, defendant was arrested at his home in Vancouver, Washington, pursuant to an outstanding State of Washington 1973 arrest warrant on an

obscenity charge. Defendant concedes the arrest was valid. Defendant and a Mr. Woodrum were outside, standing near the house, when the officers approached. Defendant handed Woodrum a brown paper bag. Woodrum immediately walked away with the bag. One officer pursued Woodrum, who, at the time the officer approached him, was either placing the bag into the trunk of his vehicle or was about to do so. The officer directed Woodrum to retrieve the bag, which he did. The officers inspected the contents of the paper bag at the house where defendant had been escorted and placed under arrest.

Defendant contends the seizure of the bag was improper for a number of reasons. The threshold question is whether defendant possessed a "legitimate expectation of privacy" in the contents of the bag so that he may protest its seizure, and whether, under the "totality of the circumstances," defendant has made a sufficient showing that his legitimate expectation of privacy was violated. *Rawlings v. Kentucky,* 448 US 98, 104, 100 S Ct 2556, 65 L Ed 2d 633, 641 (1980); *State v. Darrien,* 10 Or App 84, 497 P2d 1204, *rev den* (1972). *See also, Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967).

■ ■ Finally, defendant contends that the search and seizure of the bag was illegal because the arrest of defendant on the prior warrant from Washington was purposely delayed to enable the arresting officers to obtain evidence relevant to the Oregon prosecution. We disagree. It is true that a search may not be reasonable, under the Fourth Amendment, if the arrest is but a pretext for the search, *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969), but defendant made no showing here that the officers arrested defendant in order to catch him with the contents of the paper bag. In fact, the record is clear that the officers had no idea that defendant would have any inculpatory material when he was arrested. Defendant's argument is without merit. The motion to suppress items seized at the time of the arrest was properly denied.

## III
## PROBABLE CAUSE TO SEARCH DEFENDANT'S HOME

Following defendant's arrest and the seizure of the paper bag, the police obtained a Washington telephonic

search warrant for defendant's Vancouver home and seized property therein. *See* Washington Superior Court Criminal Rule (CrR) 2.3(c) and Justice Court Criminal Rule (JCrR) 2.10(c). Defendant's motion to suppress the evidence seized was denied.

■ Defendant first argues that, absent allegations concerning the contents of the paper bag, the telephonic warrant to search rests on an insufficent affidavit. We have held above that the bag was properly seized. Further, the officer's "oral telephonic affidavit" to the magistrate was sufficient to cause issuance of the warrant without any allegations concerning the bag. The affidavit stated with particularity a history of telephonic communication between defendant's home, his accountant and the theatres. There were allegations concerning evidence relevant to defendant's ownership and management of the theatres. The affidavit described records taken from defendant's person showing money transactions with the Star and Chelsea.

■ ■ Defendant next contends that the search of the house was too extensive in scope and duration. The search of the house was pursuant to a warrant. All material seized was pursuant to the warrant. The burden to show that the search was too extensive is the defendant's. *State v. Nearing/Baker,* 16 Or App 30, 517 P2d 308 (1973); *State v. Elkins, supra; see* ORS 133.693(4). Defendant has not met the burden. The parameters of the search are determined by the description of the things to be seized. 2 W. LaFave, *Search and Seizure,* § 4.10(d).

The warrant authorized a search of defendant's residence, curtilege and outbuildings for business records dealing with the ownership, management, employment, or direction of the three theaters, "specifically exemplified as tax records, accounts, checks, paycheck stubs, employe lists, time sheets, rent receipts, public utility bills, notes, letters and the like, evidence of the crime of sadomasochistic abuse or sexual conduct in a live show." A wide range of material was described. A large house with an office and garage and a mobile home were searched. There were numerous files containing business and personal records. In some instances documents were read in their entirety to

determine their relevancy. Because of the complexity of some documents the officers required the assistance of an Internal Revenue Service officer to review various records and their relationship to the theatres. Records included roughly ten separate bank accounts in different names. Under the facts, the search was not impermissibly intensive as to duration, nor has defendant shown that the search was outside the scope of the warrant or that any material outside the scope of the warrant was introduced.

## IV
## MOTION TO DISMISS

Defendant moved to dismiss the indictment on the ground that ORS 167.062 violates the First Amendment. The motion was denied. The indictment, in pertinent part, provides that defendant did "* * * knowingly direct, manage, finance or present a live public show in which the participants engaged in sexual conduct * * *." ORS 167.062 provides, in part:

"(3) It is unlawful for any person to knowingly direct, manage, finance or present a live public show in which the participants engaged in sadomasochistic abuse or sexual conduct."

"Sexual conduct" is defined by ORS 167.060(10). "Live public show" is defined by ORS 167.062(5)(a).[2]

Defendant argues that ORS 167.062 is unconstitutional on its face because it fails to incorporate the obscenity standards found in ORS 167.087(2), the dissemination of obscene material statute.[3] We rejected a similar claim in

---

[2] ORS 167.060(10) provides:

" 'Sexual conduct' means human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification."

ORS 167.062(5)(a) provides:

" 'Live public show' means a public show in which human beings, animals, or both appear bodily before spectators or customers."

[3] ORS 167.087 provides in relevant part:

"(2) As used in subsection (1) of this section, a matter is obscene if:

"(a) It depicts or describes in a patently offensive manner sadomasochistic abuse or sexual conduct;

*State v. Brooks,* 22 Or App 30, 537 P2d 574 (1975), *rev'd on other grounds,* 275 Or 171, 550 P2d 440 (1976):

"The only other issue presented on appeal is whether the trial court could constitutionally find that the defendants' dancing violated the public indecency statute without first finding that the dancing was obscene and thus not protected by the First Amendment. This question was resolved contrary to defendants' position by the Supreme Court in *City of Portland v. Derrington,* 253 Or 289, 451 P2d 111, *cert denied* 396 US 901 (1969). *Derrington* dealt with a Portland city ordinance which prohibited topless dancing in places where food or alcoholic beverages were served. The court upheld the ordinance and held that no specific finding that a dance is obscene must be made, saying:

" '* * * In cases of this kind, the court must look to the substance of the regulation and ask whether the elements of communication which may be present in the regulated conduct are significant enough to bring the entire course of conduct under the protection of the First Amendment. *Schneider v. State,* 308 US 147, 60 S Ct 146, 84 L Ed 155 (1939).'

" '* * * * *'

" '* * * The city's legislative judgment in the matter should be upheld unless the statute unreasonably impinges upon those elements of communication which may be incidental to the regulated conduct. We do not believe the interference with communication in the case at bar has enough substance to present a First Amendment question * * *.' 253 Or at 292-93." 22 Or App at 37-38.

We will spare the reader from a summary of the facts describing the live performances. Suffice it to say that the performances partook more of gross sexuality, e.g., touching and fondling between dancers and customers of breasts, buttocks and genitals, than of communication, and the *Derrington* rationale applies. The trial court did not err when it denied the motion to dismiss.[4]

---

"(b) The average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex; and

"(c) Taken as a whole it lacks serious literary, artistic, political or scientific value."

[4] Defendant also assigns as error the court's failure to give certain instructions that require the finder of fact to first determine that the conduct involved is "obscene" under ORS 167.087 before the conduct can be determined to be in

## V
## DEMURRER AND MOTIONS TO COMPEL ELECTION BEFORE TRIAL

### A. The Demurrer

■ The trial court did not err in overruling defendant's demurrer to the indictment on the ground that it lacked definiteness and certainty. Defendant pled not guilty on November 1, 1979. The demurrer was filed January 9, 1980. A challenge on the ground that the accusatory instrument lacks definiteness and certainty is waived if made after a plea to the merits. ORS 135.640; *State v. Dolan,* 40 Or App 447, 595 P2d 836 (1979).

### B. Pretrial Motion to Compel Election

Defendant moved against the same perceived flaws in the indictment that prompted his demurrer by motion for election. Defendant argues that the indictment is so vague, indefinite and uncertain that he was denied due process. At the conclusion of the argument at the hearing on the motion to elect, the court denied the motion with leave to renew it at a later time. The indictment charged that defendant "knowingly did direct, manage, finance or present a live public show in which sexual conduct occurred." Defendant contends, first, that the state should have been required to elect the means by which it believed the crime was committed, i.e., whether defendant "directed," "managed," "financed" or "presented" a live show. Second, defendant argues that the state should have been compelled to select a precise date, i.e, a particular live performance in which the alleged prohibited acts occurred.

■ ORS 132.550(7) requires that an indictment contain a statement constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what was intended. A defendant must have sufficient information to prepare his defense and avoid prejudicial surprise at trial. *State v. Jim/White,* 13 Or App 201, 508 P2d 462, *rev den* (1973). It is

---

violation of ORS 167.062. For the reasons discussed above, the instructions were not erroneous. *See City of Portland v. Derrington, supra. See also, United States v. O'Brien,* 391 US 367, 88 S Ct 1673, 20 L Ed 2d 672, *reh denied* 393 US 900 (1968).

sufficient to describe the offense in the words of the statute, unless the statute does not sufficiently describe the crime or set forth all of its essential elements. *State v. Jim/White, supra.* A defendant may learn more about what the state intends to prove during the course of pretrial discovery. *State v. Andrews,* 16 Or App 144, 517 P2d 1062 (1974); *see State v. Shadley/Spencer/Rowe,* 16 Or App 113, 517 P2d 324 (1973).

■ The indictment here gave defendant adequate notice of the crime charged.[5] Directing, managing, financing and presenting a live show did not constitute separate crimes. These are alternative means by which a person may violate ORS 167.062. Under ORS 132.560(1), the state was not required to specify the means by which the crime was committed.[6]

■ ■ The indictment covered a time period spanning November, 1978, to September, 1979. Whether a court should compel the state to elect a specific date is largely a matter of judicial discretion. *State v. Yielding,* 238 Or 419, 395 P2d 172 (1964); *State v. Keelen,* 103 Or 172, 203 P 306, 204 P 162, 204 P 164 (1922). The court did not abuse its discretion in failing to require prior to trial an election of the specific date on which the alleged acts occurred. ORS 135.717 provides:

> "The precise time at which the crime was committed need not be stated in the accusatory instrument, but it may be alleged to have been committed at any time before the finding thereof and within the time in which an action may be commenced therefor, except where the time is a material element in the offense."

---

[5] Defendant relies on *State v. Jim/White,* 13 Or App 201, 508 P2d 462 (1969), for his contention that a motion to elect at the preliminary stage was necessary here. The reliance is misplaced. 13 Or App at 216. ORS 167.062(3) describes the crime with particularity and leaves no doubt as to what acts bring a defendant within the prohibition of the statute. Therefore, the indictment describing the offense in the language of the statute was sufficient under the guidelines of *State v. Jim/White, supra,* 13 Or App at 214-217.

[6] ORS 132.560 provides in relevant part:

"The indictment must charge but one crime, and in one form only, except that:

"(1) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative."

■ ■ Time is a material element if the act charged is a crime if committed at one time but not if committed at another. *State v. Howard,* 214 Or 611, 331 P2d 1116 (1958). Time was not a material element of ORS 167.062. Further, the state is not required to elect until there has been sufficient evidence introduced to enable the prosecution to make an intelligent choice. *State v. Yielding, supra,* 238 Or at 423. The court did not err in not requiring the state to make a pretrial election.

## VI
## THE RENEWED "MOTIONS TO ELECT"

■ ■ Defendant also assigns as error the court's refusal to grant his renewed "motions to elect."[7]

■ At the end of the state's case in chief, defendant moved to dismiss on the ground that, by not requiring the state to elect a specific date, the court denied defendant due process of law and that it was impossible to present a proper defense. The motion was denied. Defendant renewed the motion before closing arguments, referring to it as a motion for "judgment of acquittal or motion for directed verdict of acquittal." That motion was denied. The motions were not made to require the state to elect. At the pretrial hearing, defendant was given leave to renew his motion to elect. Failing to do so, he cannot seek dismissal for the court's failure, *sua sponte,* to compel an election.

We find no merit in defendant's remaining assignments of error.

Affirmed.

---

[7] Defendant also argues, under the same assignment of error, that (1) the court erred in denying defendant's motion for judgment of acquittal on the grounds that the indictment was unconstitutionally vague and uncertain and (2) there was insufficient evidence to establish that defendant knowingly directed, managed, financed or represented the live show. Defendant's constitutional claim is the same one rejected in IV above.

As to defendant's claim regarding insufficient proof, in reviewing a trial court's denial of a motion to acquit we read all conflicts in the evidence as being resolved in favor of the state and give the state the benefit of all inferences that can properly be drawn from the evidence. *State v. Shipp,* 27 Or App 675, 682, 557 P2d 244 (1976). The evidence was sufficient to support a verdict of guilty. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 L Ed 2d 560 (1979); *accord, State v. Harris,* 288 Or 703, 609 P2d 798 (1980).